Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued May 9, 2003          Decided June 3, 2003

No. 02-3052

UNITED STATES OF AMERICA,
APPELLEE

v.

CESAR MARCELLINO MENDEZ-CRUZ,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 99cr00066-01)

———

*Tony Axam, Jr.*, Assistant Federal Public Defender, argued the cause for appellant. With him on the briefs was *A. J. Kramer*, Federal Public Defender. *Neil H. Jaffee*, Assistant Federal Public Defender, entered an appearance.

*Thomas J. Tourish, Jr.*, Assistant U.S. Attorney, argued the cause for appellee. On the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, *John R. Fisher*, *Barbara J. Valliere*,

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*William J. O'Malley, Jr.*, and *Ann M. Carroll*, Assistant U.S. Attorneys.

Before: EDWARDS, HENDERSON and RANDOLPH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* EDWARDS.

EDWARDS, *Circuit Judge*: On May 20, 1999, appellant Cesar Marcellino Mendez-Cruz pleaded guilty to illegal reentry after deportation as an aggravated felon, in violation of 8 U.S.C. § 1326(a) & (b)(2). Appellant was subsequently sentenced to 66 months of incarceration, to be followed by three years' supervised release. This sentence was based on a Presentence Investigation Report ("PSR") that included a two-point criminal history enhancement under U.S.S.G. § 4A1.1(d), because appellant had committed some part of the offense (the act of reentering the United States) while he was on parole. Appellant did not challenge this enhancement at the sentencing hearing, but he now argues that it was improper. Appellant contends that the District Court erred in applying the two-point enhancement, because, in his view, he pleaded guilty to the status offense of being "found in" the United States, 8 U.S.C. § 1326(a)(2), and that reentering the country is neither an element of, nor conduct relevant to, that offense. Appellant also contends that, even if reentry were considered relevant conduct, he did not reenter the country before his parole expired. Because these claims were not raised during the sentencing hearing, we review for plain error, *see* FED. R. CRIM. P. 52(b), and conclude that the District Court did not plainly err.

Appellant advances the additional claim that his trial attorney rendered ineffective assistance by failing to raise any challenges to the two-point enhancement. We reject this contention, because appellant can demonstrate neither that his attorney committed errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *Strickland v. Washington*, 466 U.S. 668, 687 (1984), nor that counsel's failure to challenge the two-point enhancement resulted in prejudice to appellant.

## I.  BACKGROUND

On April 15, 1985, appellant was convicted of possession with the intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a).  Appellant was paroled in 1987.  While under parole supervision, appellant was arrested in New Jersey, charged with possession of cocaine with intent to distribute, and convicted in 1988.  On August 31, 1994, while still on parole for his 1985 conviction, appellant was deported to the Dominican Republic.  Appellant's parole was due to expire on March 24, 1998.

On December 15, 1998, appellant was arrested in Washington, D.C. following a surveillance operation by agents with the INS and Drug Enforcement Administration, as well as Metropolitan Police Department officers.  At the time of his arrest, appellant possessed a driver's license and vehicle registration in the name of Angel Luis Viera.  However, after the authorities discovered a piece of paper bearing the name Cesar Mendez-Cruz in appellant's car, appellant admitted that he was Cesar Mendez-Cruz, and that he previously had been deported from the United States following a drug-related conviction.  According to the PSR, appellant informed officers at the scene "that he had entered the United States about one year prior to that date."  PSR at 5, ¶ 3 (quoted in Br. of Appellant at 13).  Search warrants were issued for two of appellant's properties and agents found further identification documents bearing appellant's likeness but made out in false names.  One of the documents was a United States passport bearing the name Angel Luis Viera.

On February 25, 1999, appellant was indicted.  He subsequently pleaded guilty to the lead count of the indictment, illegal reentry after deportation as an aggravated felon.  Following appellant's plea, the District Court ordered that a PSR be prepared.  In the report writer's interview with appellant, appellant said that he had returned to the United States in 1996.  The PSR detailed appellant's offense conduct and indicated that, after his arrest, appellant admitted to the arresting agents that he had been deported following a prior drug-related conviction.  It also noted appellant's remark at

the time of his arrest "that he had entered the United States about one year prior to that date." The PSR Guidelines calculation yielded an Offense Level of 21, and a Criminal History Category of IV. Two criminal history points were included in that calculation under U.S.S.G. § 4A1.1(d), because appellant had committed some part of the offense while on parole.

On August 16, 1999, the District Court adopted the PSR after neither party objected to the final version of the report. The court then reviewed the Guidelines calculation set forth in the report. The court specified the basis for each calculation, and noted that "an additional two points [were added to appellant's criminal history calculation] because he was on parole when he committed this offense." Sent. Tr. at 4. In passing sentence, the trial court noted that both of appellant's prior convictions involved substantial amounts of drugs. *Id.* at 20. The court reviewed the offense conduct, noted that appellant's 1985 conviction was an aggravated felony, and pointed out that when he was deported, appellant was given notice of the penalty he would suffer if he returned. The District Court denied appellant's request for a downward departure pursuant to *United States v. Smith*, 27 F.3d 649 (D.C. Cir. 1994), based upon his status as a deportable alien. Sent. Tr. at 23-24.

After sentencing, appellant filed a *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. In an attached memorandum, appellant asserted that his counsel was ineffective because: (1) counsel failed to file, as requested, a notice of appeal; (2) counsel failed to object to the calculation of his criminal history points; and (3) counsel failed to request a downward departure based on factors contained in the PSR. With respect to the second claim, appellant urged that, because, in his view, he was convicted of being "found in" the United States, his illegal entry was not part of the offense of conviction, and thus he did not commit any part of the offense to which he pleaded guilty while on parole. Further, based on an April 1998 date-stamp on the passport bearing the name Angel Luis Viera,

appellant argued that the record indicated that he entered the United States after his parole had expired.

On June 28, 2001, after the government opposed the motion, the District Court issued an 11-page Memorandum Opinion denying in part appellant's claim of ineffective assistance of counsel. With respect to the calculation of appellant's criminal history category, the District Court stated:

> By Defendant's own admission to the officers that arrested him on December 15, 1998, he "had entered the United States about one year prior [to the date of his arrest]." [PSR] at 5, ¶ 13. Thus, according to the Defendant himself, he likely entered the United States sometime around December 1997. By any reasonable interpretation, entering the country is directly relevant to the instant offense of being "found in the United States after having been deported." Defendant's parole from earlier convictions did not expire until March 25, 1998; as such, he committed part of the instant offense while on parole, subjecting himself to the application of U.S.S.G. § 4A1.1(d) and its enhancements. Defendant's contention that the enhancement was erroneous is simply invalid.

*United States v. Mendez-Cruz*, Nos. 00-1702, 99-66-01 (D.D.C. June 28, 2001) (mem.), at 7, Appendix ("App.") 79 ("*June 28 Opinion*"). The District Court thus found that, because application of the enhancement was appropriate, counsel had no obligation "to make an objection that would ultimately prove either frivolous or in vain," and thus "counsel's failure to object was neither deficient nor prejudicial." *Id.* at 7-8, App. 79-80.

The District Court, however, found that the record evidence was insufficient for it to decide appellant's claim with respect to the filing of his notice of appeal. The court thus granted a hearing on that portion of appellant's motion. After that hearing, the District Court issued another Memorandum Opinion, holding that counsel had failed to consult with appellant regarding an appeal, as required by *Roe v.*

*Flores-Ortega*, 528 U.S. 470, 478-79 (2000). Given the evidence of appellant's desire to pursue an appeal, the court found that appellant was prejudiced by counsel's failure. The court thus reentered the judgment so that appellant could appeal his sentence.

## II.  ANALYSIS

### A.  The Two-Point Enhancement

In challenging the two-point enhancement to his sentence, appellant first argues that the act of reentering the United States is not an element of being found in the United States under 8 U.S.C. § 1326(a), and is inconsequential in establishing a violation of the statute. Appellant points out that § 1326(a)(2) provides criminal penalties for any alien who "enters, attempts to enter, or is at any time found in, the United States." Three separate offenses are contained in subsection (a)(2): (1) reentry of a deported alien; (2) attempted reentry of a deported alien; and (3) being a previously deported alien who is found in the United States. *See United States v. Pacheco-Medina*, 212 F.3d 1162, 1165 (9th Cir. 2000) (noting that entering, attempting to enter, and being "found in" the United States under 8 U.S.C. § 1326 are "three distinct offenses"); *United States v. Ruelas-Arreguin*, 219 F.3d 1056, 1061 (9th Cir. 2000) (same). Appellant argues that, while the first two offenses require the government to prove an affirmative act on the defendant's part (reentry or attempted reentry), the third offense requires no evidence of an affirmative act, but only requires that the government "find" the defendant in the United States. Thus, appellant argues that because being "found in" the United States does not require the government to prove that the defendant committed an act, any analysis of his relevant conduct should only concern the events of December 15, 1998: "Actions by the defendant at any other time are irrelevant to determine his culpability for conviction or to evaluate relevant conduct." Reply Br. of Appellant at 5. This argument is without merit.

The date of reentry must be considered relevant conduct because it was an "act[ ] committed . . . during the commis-

sion of the offense of conviction, [or] in preparation for that offense." U.S.S.G. § 1B1.3(a)(1)(A). Reentry was clearly an act committed during the offense of being found in the United States because that offense is a continuing violation that commences with the illegal entry. *See, e.g., United States v. Lopez-Flores*, 275 F.3d 661, 663 (7th Cir. 2001); *Pacheco-Medina*, 212 F.3d at 1166 ("[T]he concept of entry not only illuminates but also is embedded in the 'found in' offense."); *Ruelas-Arreguin*, 219 F.3d at 1061 ("[T]he crime of being 'found in' the United States commences with the illegal entry...."); *United States v. Diaz-Diaz*, 135 F.3d 572, 575 (8th Cir. 1998); *United States v. Castrillon-Gonzalzes*, 77 F.3d 403, 406 (11th Cir. 1996) ("The crime of being 'found in' the United States illegally ... was *commenced* by the ... illegal entry....").

Appellant argues that, even if the date of entry constitutes conduct relevant to the offense of being found in the United States, the record evidence does not support the District Court's conclusion that appellant's most recent reentry occurred while he was on parole. Appellant argues – and we agree – that the relevant conduct in this case should be limited to the reentry immediately preceding appellant being found in the United States: If appellant had previously entered and then left the country, he avoided prosecution for that distinct offense when he left. *See Ruelas-Arreguin*, 219 F.3d at 1061 ("[A]n alien can avoid being 'found in' the United States by departing after his illegal re-entry."); *United States v. Ayala*, 35 F.3d 423, 425 (9th Cir. 1994) ("To avoid being 'found in' the United States, a deported alien can either not re-enter the United States or, if he has already re-entered the United States, he can leave."). When the District Court sentenced appellant, it relied on the PSR, which could support a 1996 or 1997 reentry date, either of which would have occurred while appellant was still on parole. Subsequent to the sentencing, the District Court made clear that it believed appellant's most recent entry had occurred in 1997, based on "Defendant's own admission to the officers that arrested him on December 15, 1998, [that] he 'had entered the United States about one year prior [to the date of his arrest].'"

*June 28 Opinion* at 7, App. 79. Thus, we examine whether the District Court erred in finding that appellant reentered the country in 1997, rather than in April 1998. Because appellant's counsel did not object to the enhancement at sentencing, we review for plain error. *See* FED. R. CRIM. P. 52(b); *United States v. Saro*, 24 F.3d 283, 286 (D.C. Cir. 1994) ("[The defendant] did not raise a timely objection to the findings or analysis of his pre-sentence report.... [T]he district court's decision to adopt the findings and analysis of that report is therefore reviewable only for plain error.") (citations omitted).

Appellant argues that the 1998 date-stamp on the passport bearing the name Angel Luis Viera is the clearest evidence of the date of his most recent reentry. Appellant raised this argument in his § 2255 motion, but not at his sentencing hearing. The District Court apparently gave no credence to this claim, nor do we. A fraudulent passport can hardly be regarded as conclusive evidence of the date when appellant unlawfully reentered the United States.

Appellant also argues that the District Court erred in relying on his statement to the arresting officers in determining that appellant's most recent reentry occurred in late 1997. Appellant argues that, although his statement indicated that he had entered the United States "about a year prior to that date," the phrase "that date" is ambiguous, because it is unclear from the statement or its context to what specific date the phrase "that date" refers. Moreover, appellant argues that, from the context of the PSR, the statement in question seems to refer to an entry that occurred before appellant's 1985 drug conviction, rather than to his reentry immediately preceding the instant offense. The PSR's entire discussion of appellant's admission reads:

> The agent showed the defendant the document bearing the name of Cesar Mendez-Cruz. The agent informed the defendant that he believed the defendant was Cesar Mendez. He also told the defendant that he was aware that Cesar Mendez had sustained a prior drug conviction and had previously been

> deported. The defendant then acknowledged that he was the Cesar Mendez-Cruz who had sustained a drug-related conviction and had been previously deported. The defendant informed that he had entered the United States about one year prior to that date. The agent transported Mendez-Cruz to the detention center where he was charged accordingly.

PSR at 5, ¶ 3 (quoted in Br. of Appellant at 12-13). Appellant's interpretation of the language in the PSR is by no means so clear that we can find that the District Court plainly erred by interpreting it to mean that appellant admitted to illegally entering the country in late 1997. *See Saro*, 24 F.3d at 286-87 (stating that, to satisfy the plain error standard, the error must have been both "obvious" and also prejudicial); *see also United States v. Washington*, 115 F.3d 1008, 1010 (D.C. Cir. 1997) ("[E]ven for sentencing, 'obvious' means obvious; the district court is not required to have second sight.").

## B.   Ineffectiveness of Counsel

We also find no error in the District Court's determination that appellant's counsel did not perform ineffectively by failing to challenge the two-point enhancement. The standard for evaluating claims of ineffective assistance of counsel is set forth in *Strickland.* There, the Supreme Court set forth a two-pronged analysis, requiring the defendant to show: (1) that his attorney's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) that the defendant was prejudiced by those errors. *Strickland*, 466 U.S. at 687. Appellant does not satisfy either prong of this test.

To satisfy the first *Strickland* prong, appellant must prove that, in light of all the circumstances as they appeared at the time of the relevant conduct, "counsel's representation fell below an objective standard of reasonableness": In other words, that it fell below the "prevailing professional norms." *Id*. at 688; *see also United States v. Glover*, 153 F.3d 749, 758 (D.C. Cir. 1998). "Judicial scrutiny of counsel's performance

must be highly deferential.... [T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also United States v. Weathers*, 186 F.3d 948, 958 (D.C. Cir. 1999). Appellant cannot make this showing, because appellant's counsel may have decided not to challenge the two-point enhancement for sound strategic reasons. To challenge the enhancement, counsel would have had to point out that appellant had entered the country illegally to obtain the fraudulent passport, then left the country and used the passport again to illegally reenter. Counsel may have believed that appellant's case would not be advanced if counsel reminded the court of appellant's repeated violations, particularly when appellant was seeking a downward departure.

As for the second *Strickland* prong, the District Court found that there was no prejudice, because appellant's most recent entry into the country occurred in late 1997. In other words, on the facts found by the District Court, appellant's two-point enhancement was undoubtedly correct. Therefore, he was not prejudiced by any failure of his counsel. We must accept the District Court's findings of fact regarding appellant's ineffectiveness claims "unless they are clearly erroneous." *United States v. Askew*, 88 F.3d 1065, 1070 (D.C. Cir. 1996); *see also United States v. Del Rosario*, 902 F.2d 55, 58 (D.C. Cir. 1990). For the reasons provided in *supra* Part II.A, we find that the District Court did not clearly err in determining that appellant's most recent entry occurred in late 1997.

## III. CONCLUSION

For the reasons enumerated above, we affirm appellant's two-point criminal history enhancement, and also affirm the District Court's determination that appellant's counsel did not act ineffectively by failing to challenge the enhancement at sentencing.